UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY EDELBROCK,<br><br>      Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case No.: 1:12-cv-00514 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF, KIMBERLY EDELBROCK |

     Kimberly Edelbrock ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. According to Plaintiff, the administrative law judge erred in evaluating the medical evidence, and Plaintiff seeks judicial review of the decision denying benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

### PROCEDURAL HISTORY

     Plaintiff filed an application for supplemental security income on September 29, 2008, alleging disability beginning December 31, 2001. (Doc. 11-6 at 2-8). The Social Security Administration denied Plaintiff's claim on February 26, 2009, and upon reconsideration on November 10, 2009. (Doc. 11-2 at 1). After requesting a hearing, Plaintiff testified before an ALJ on January 26, 2011. (Doc. 11-3 at 29). The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on February 7, 2011. (Doc. 11-3 at 9-23). Plaintiff requested a review by the Appeals Council of Social Security, which declined to review the ALJ's decision on

1

February 3, 2012.  *Id.* at 2-4.  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to establish he or she is able to engage in substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

**A.    Relevant Medical Opinions[1]**

Dr. Aimee Riffell conducted a comprehensive psychiatric evaluation on December 20, 2008. (Doc. 11-8 at 48- 53). Plaintiff told Dr. Riffell her posttraumatic stress disorder symptoms due to "trauma experienced while in a volatile domestic partnership" were "of moderate severity," and being treated with medicine. *Id.* Also, Plaintiff reported she was "a victim of physical and sexual abuse as early as age 3, and . . .experienc[ed] nightmares and heightened anxiety and startle responses since that time." *Id.* Dr. Riffell noted:

> Ms. Edelbrock reports that her primary mental health symptoms include depressed mood, anxiety, poor concentration, panic attacks, headaches, chronic pain, loss of interest in pleasurable activities, crying and racing thoughts, poor memory, inability to be in crowds, loss of stamina and fatigue, mood swings, sleep problems, social isolation, and withdrawal.

*Id.* at 49. However, Plaintiff believed she did not have "any current attention and/or concentration difficulties which would interfere with her driving ability." *Id.* at 48.

Dr. Riffell believed Plaintiff "appeared nervous throughout the interview," although Plaintiff was able to participate during the examination and "was able to appear less guarded as rapport was established." *Id.* at 50. Testing Plaintiff's memory, Dr. Riffell found Plaintiff's recent memory was "intact," and she had "a good past memory for phone number, addresses, and date of birth." *Id.* at 51.

---

[1] Because Plaintiff only takes issue with the determination of her mental residual functional capacity assessment and does not appeal the ALJ's findings regarding her physical abilities, medical opinions concerning Plaintiff's physical ailments are omitted from the Court's summary.

3

Further, Plaintiff's concentration was sufficient "to complete a three-step command . . . without hesitation and difficulty." *Id.* Accordingly, Dr. Riffell opined: "[Plaintiff] has fair concentration, and the pace of the examination was adequate. She was able to focus on questions and respond appropriately. However, under unusually stressed conditions, [her] ability to maintain appropriate pace and concentration, as well as persistence, may be impaired." *Id.* at 52. Based upon the examination, Dr. Riffell opined Plaintiff was "capable of completing simple and repetitive tasks and would not need additional supervision in the work environment for these types of tasks," but she "would probably have some difficulty with complex tests because of her anxiety and depression." *Id.* at 53. Further, Dr. Riffell believed Plaintiff "would have some difficulty dealing with overall stress within the work environment, again due to her mood-related symptoms." *Id.*

On January 14, 2009, Dr. Preston Davis completed a psychiatric review technique and mental residual functional capacity assessment. (Doc. 11-8 at 54-67). Dr. Davis indicated Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; to interact appropriately with the general public; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at 54-55. Dr. Davis noted: "The [claimant] can understand, remember & carryout simple [work] instructions. She can sustain her concentration, pace & her persistence w/ her [work] tasks for 2 hr blocks of time, w/ customary breaks, over the course of a regular wkday/wk. She can interact w/ supervisors on all levels." *Id.* at 56, 67. According to Dr. Davis, Plaintiff had "mood problems," which would cause "difficulty coping [with] the stress of having to consistently interact w/ the general public or w/ coworkers." *Id.* Nevertheless, Dr. Davis believed Plaintiff could perform tasks with "little" contact with the general public and coworkers." *Id.*

On November 9, 2009, Dr. Garcia reviewed the record and affirmed the finding that Plaintiff was able to perform simple, repetitive tasks with limited contact with the public. (Doc. 11-8 at 84-85.

Plaintiff's treating physician, Dr. Gurmej Dhillon, completed a mental residual functional capacity questionnaire on December 18, 2010. (Doc. 11-12 at 38-41). According to Dr. Dhillon, Plaintiff's mental impairments included depression, anxiety, and panic attacks. *Id.* at 38. Dr. Dhillon opined Plaintiff was primarily "unable to meet competitive standards" with her ability to understand, remember, and carry out either simple or detailed instructions; to maintain attention for two hours; to

make simple work-related decisions; and completed a normal workday and workweek without interruptions from psychologically-based symptoms. *Id.* at 38-39.

## B.    Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ on January 26, 2011. (Doc. 11-3 at 29). She reported that she had acquired a G.E.D. and attended a vocational school to be a medical assistant. *Id.* at 34-35. Plaintiff stated she worked previously as a bakery clerk, until she was injured while working on December 31, 2001. *Id.* at 35-37. According to Plaintiff, she was no longer able to work due to her "physical ailments" and because she could not "be around a group of people." *Id.* at 39-40.

She explained she had "a very bad panic disorder and panic attacks." (Doc. 11-3 at 40). Plaintiff said the panic attacks "last sometimes for hours, sometimes all day," which caused her to go in her room, cry, and take a nap. *Id.* at 62. In addition, Plaintiff believed she had "no concentration and . . . a memory loss." *Id.* at 40. Plaintiff explained she would hide things from herself, only to forget where she placed the items. *Id.* at 41. Further, Plaintiff said she was unable to sleep through an entire night because she had "a lot of night terrors." *Id.* at 57.

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after applying for benefits on September 29, 2008. (Doc. 11-3 at 11). Second, the ALJ found Plaintiff's posttraumatic stress disorder, major depressive disorder, asthma, degenerative disc disease, and gastroesophageal reflux disease were severe impairments. *Id.* However, these impairments did not meet or medically equal a listing. *Id.* Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except that she can only occasionally reach overhead with the left non-dominate upper extremity. She can understand, remember, and carry out simple tasks and instructions, sustain concentration and persistence sufficiently for two-hour periods, and interact adequately with supervisors and coworkers, but should only interact with the general public on an occasional basis.

*Id.* at 13. With this RFC, the ALJ concluded Plaintiff was unable to perform past relevant work. *Id.* at 21. However, the ALJ determined that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform. *Id.* at 22. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 23.

## DISCUSSION AND ANALYSIS

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2).

Appealing the Commissioner's decision, Plaintiff asserts the ALJ erred by rejecting medical evidence from Dr. Riffell, an examining physician, and Dr. Davis, a non-examining physician.[2] (Doc. 14 at 5). Plaintiff notes that Dr. Riffell "described [Plaintiff] as 'cognitively intact and has no severe deficits with recall for past and/or current events, although at times she may experience difficulty with concentration and attention when under stress.' (Doc. 14 at 6) (quoting Doc. 11-8 at 53). In addition, Dr. Riffell determined Plaintiff "would have some difficulty dealing with overall stress within the work environment, again due to her mood-related symptoms." *Id.* After Dr. Riffell examined Plaintiff, Dr. Davis reviewed the medical record, and opined Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; to work in coordination with or proximity to others without being distracted; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. *Id.* at 7 (citing Doc. 11-8 at 54-55). Plaintiff contends the ALJ failed to properly evaluate these opinions. (Doc. 14 at 6-7).

**A.   The ALJ incorporated the opinion of Dr. Riffell into the RFC.**

In evaluating the medical evidence, the ALJ explained he gave "significant weight" to the opinions of Dr. Riffell and Dr. Davis. (Doc. 11-3 at 20). The ALJ recognized Dr. Riffell's opinion Plaintiff "would have some difficulty dealing with the overall stress within the work environment," but also was "cognitively intact and is expected to remain so." (Doc. 11-3 at 15). Significantly, in

---

[2] Plaintiff does not challenge the ALJ's rejection of the opinion offered by her treating physician, Dr. Dhillon.

6

spite of these limitations, Dr. Riffell concluded Plaintiff was "capable of completing simple and repetitive tasks." (Doc. 11-8 at 51). By finding Plaintiff was able to "understand, remember, and carry out simple tasks and instructions" (Doc. 11-3 at 13), the ALJ did not reject Dr. Riffell's opinion. Rather, the ALJ incorporated the conclusion of Dr. Riffell into the mental RFC.

**B.    The ALJ properly rejected portions of the opinion of Dr. Davis.**

Although the ALJ also gave "significant weight" to the opinion of Dr. Davis, the ALJ noted he did not accept conclusions that Plaintiff "would have difficulty in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Doc. 11-3 at 20). Plaintiff asserts the ALJ "fails to articulate a legally sufficient rational" for rejecting the opinion, but rather rejected the opinions only "because the ALJ disagreed with them and that they are unsupported." (Doc. 14 at 7).

Importantly, a physician's opinion is not binding upon the ALJ, and may be rejected whether the opinion is contradicted by another. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When there is conflicting medical evidence, "it is the ALJ's role . . . to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

Here, the ALJ stated he rejected Dr. Davis' conclusions regarding Plaintiff's social limitations because Plaintiff "has not shown a tendency to exhibit behavior extremes, acting in a distracting manner, or inability to get along with others." (Doc. 11-3 at 20). The ALJ noted: "The claimant's social problems tend toward isolation . . . She has related well to those with whom she has come in contact. Her daughter has said that the claimant gets along fine with others. She acted appropriately during the hearing." *Id.* In addition, the ALJ found Dr. Davis based his opinion upon the subjective complaints of Plaintiff, while the ALJ found Plaintiff was entitled to less credibility.[3] *Id.* Thus, the ALJ identified specific evidence in the record supporting his decision, and did not cavalierly disregard the portions of the assessment by Dr. Davis.

Moreover, the Ninth Circuit has determined a medical opinion may be rejected where it is inconsistent with a claimant's level of functioning. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.

---

[3] Notably, Plaintiff does not challenge the ALJ's findings regarding her credibility.

7

2001).  Likewise, an opinion may be rejected where it is predicated upon a claimant's subjective complaints that have been rejected by the ALJ.  *Ryan v. Astrue*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  Accordingly, the reasons set forth by the ALJ are legally sufficient to reject the identified portions of the opinion offered by Dr. Davis.

**C.    The restriction to "simple" tasks encompasses Plaintiff's moderate mental limitations.**

As noted by Plaintiff, Dr. Davis opined Plaintiff was "moderately limited" in other areas of cognitive functioning, including her ability understand, remember, and carry out detailed instructions.  (Doc. 14 at 7).  In addition, the ALJ determined Plaintiff had "moderate difficulties" with social functioning, as well as concentration, persistence, or pace.  (Doc. 11-3 at 12).

Significantly, a limitation to simple tasks incorporates moderate limitations in several areas of cognitive functioning.  *See, e.g., Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009) (holding the ALJ did not err in finding that a claimant with moderate limitations, including in the ability to carry out detailed instructions and maintain attention and concentration for extended periods, was not disabled); *Sabin v. Astrue*, 337 Fed. Appx. 617, 621 (9th Cir. 2009) ("the ALJ determined the end result of the plaintiff's moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks"); *Ceballos v. Astrue*, 2011 U.S. Dist. LEXIS 97107 at *25-26 (E.D. Cal. Aug. 30, 2011) (opinion of physician that the claimant suffered moderate limitations in ability to understand, remember, and carry out detailed instructions was substantial evidence supporting the ALJ's conclusion that the Plaintiff should be limited to performing simple work).  Because the ALJ found Plaintiff could perform simple, unskilled work (Doc. 11-3 at 22), the assessments of Dr. Davis regarding Plaintiff's "moderate" limitations were encompassed in the RFC.

**D.    Substantial evidence supports the RFC.**

The opinion of an examining physician may be substantial evidence in support of the ALJ's decision when the opinion is based upon independent clinical findings.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  As noted by the ALJ, after conducting a comprehensive psychiatric evaluation, Dr. Riffell concluded Plaintiff was "capable of performing simple repetitive tasks" in spite of her mental limitations.  (Doc. 11-3 at 20; *see also* Doc. 11-8 at 53).  Accordingly, Dr. Riffell's opinion is substantial evidence supporting the ALJ's

determination that Plaintiff is able to perform simple, unskilled work.

Further, the opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995); *Tonapetyan*, 242 F.3d at 1149 ("[a]lthough the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record"). Here, Drs. Davis and Garcia opined Plaintiff was able to perform simple, repetitive tasks with limited contact with the public. (Doc. 11-8 at 56, 67, 84-85). Because the opinions of Drs. Davis and Garcia are consistent with the opinion of Dr. Riffell, they are substantial evidence in support of the RFC determined by the ALJ limiting Plaintiff's interaction with the general public.

**CONCLUSION AND ORDER**

For the foregoing reasons, the ALJ applied the proper legal standards in evaluating the opinions of Dr. Riffell and Dr. Davis. Further, the finding that Plaintiff is able to perform simple tasks with limitations on her interaction with the general public is supported by substantial evidence in the record. Thus, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff Kimberly Edelbrock.

IT IS SO ORDERED.

Dated: __April 13, 2013__         /s/ Jennifer L. Thurston
                                  UNITED STATES MAGISTRATE JUDGE